IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DENNIS DIZON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 22-716 (MN) |
| | ) |
| J.P. MORGAN CHASE, | ) |
| | ) |
| Defendant. | ) |

**<u>MEMORANDUM OPINION</u>**

Dennis Dizon – *Pro Se* Plaintiff

Kaan Ekiner, COZEN O'CONNOR, Wilmington, DE – Attorneys for Defendant

March 10, 2023
Wilmington, Delaware


**NOREIKA, U.S. DISTRICT JUDGE**

Presently before the Court is Defendant JPMorgan Chase Bank, N.A.'s[1] ("Defendant" or "JPMorgan") Motion to Compel Arbitration and Stay Proceedings based on an arbitration agreement that applies to Plaintiff's asserted claims. (D.I. 9, 10, 12). Plaintiff, Dennis Dizon ("Plaintiff"), who is proceeding *pro se*, opposes the motion. (D.I. 11). For the reasons set forth below, the motion is granted.

**I.     BACKGROUND**

Plaintiff began working for JPMorgan as a contractor/consultant in October 2017 (D.I. 1 at 4) and was subsequently hired by JPMorgan directly in February of 2019 (D.I. 10-1). Defendant's employment offer letter to Plaintiff dated January 18, 2019 ("the Offer Letter") contains a section titled "Binding Arbitration Agreement" ("the Agreement"). (D.I. 10, Exhibit B). The Agreement establishes a mandatory arbitration process for claims made by employees arising out of their employment or termination of employment with JPMorgan. (D.I. 10-2 at 6-11). Specifically, the Agreement states:

> "As a condition of and in consideration of [Plaintiff's] employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries," any and all "Covered Claims" between Plaintiff and JPMorgan Chase "shall be submitted to and resolved by final and binding arbitration in accordance with [the] Agreement."

(D.I. 10-2 at 7).

The Agreement defines "Covered Claims" as encompassing:

> all legally protected employment-related claims, . . . that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related

---
[1] In Defendant's opening brief filed on June 30, 2022, it states that it was improperly named in the Complaint as J.P. Morgan Chase and the proper Defendant should be JPMorgan Chase Bank, N.A. (D.I. 5).

1

>   claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

(*Id.*). The Agreement provides that arbitration "will occur in the state where [employee is] currently or was most recently employed . . . unless otherwise agreed by the Parties." (*Id.* at 9).

Plaintiff electronically accepted the Offer on January 18, 2019 at 4:14 a.m. (*Id*. at 12). JPMorgan terminated Plaintiff's employment on or about November 8, 2020. (D.I. 1 at 5). Plaintiff commenced this action on June 1, 2022, by filing a Complaint for Employment Discrimination based on his race, color, and national origin. (D.I. 1). He alleges that he "was subjected to unlawful retaliation based on complaints of discrimination against several members of leadership" and that he "was also excluded from opportunities to advance his career." (*Id*.). Plaintiff demands $1,000,000 in monetary damages, that the Court appoint him legal counsel, and such other relief as may be appropriate, including costs and attorney's fee. (*Id*.).[2]

---

[2]  Attached to the Complaint are Plaintiff's Charge of Discrimination dated February 12, 2021 filed with the Delaware Department of Labor and his Determination and Notice of Rights from the U.S. Equal Employment Opportunity Commission dated March 7, 2022. Plaintiff states that he received the Notice-of-Right-to-Sue letter on the same day, March 7, 2022.

On July 22, 2022, Defendant moved to compel arbitration of Plaintiff's claims and to stay all proceedings pending the outcome of the arbitration alleging that the parties entered into a valid, binding arbitration agreement. (D.I. 9). Defendant alleges that pursuant to the binding arbitration agreement, all "employment-related claims, and specifically those alleging violations of Title VII of the Civil Rights Act of 1964, be resolved through arbitration before the American Arbitration Association." (D.I. 10 at 1). Plaintiff opposes Defendant's motion, asserting that the Agreement "should be considered null and void because it was formulated in bad faith and was designed to: a) Preemptively strip away the plaintiff's civil rights; b) Extort the plaintiff into submission by accepting an unreasonable agreement; c) Inflict economic duress to force the plaintiff to succumb to undue influence." (D.I. 11 at 1).

II.     **LEGAL STANDARDS**

With the Federal Arbitration Act ("FAA"), "Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms provided for individualized proceedings." *Epic Sys. Corp. v. Lewis*, - U.S.--, 138 S. Ct. 1612, 1621 (2018)). This ensures that arbitration agreements "are enforceable to the same extent as other contracts." *Puleo v. Chase Bank USA, NA.*, 605 F .3d 172, 178 (3d Cir. 2010).

When presented with an arbitration provision, this Court's task is to determine whether "a valid agreement to arbitrate exists between the parties and [whether] the specific dispute falls within the substantive scope of that agreement." *John Hancock Mut. Life Ins. Co. v. Glick*, 151 F.3d 132, 137 (3d Cir. 1998). When conducting this analysis, courts in the Third Circuit apply the standard for failure to state a claim under Rule 12(b)(6). *In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019) ("Remicade") (quoting *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019)). Although the Third Circuit has held that a district court lacks the authority to compel arbitration outside of its district, *Econo-Car Int'l, Inc. v. Antilles Car*

*Rentals, Inc.*, 499 F.2d 1391, 1394 (3d Cir. 1974), district courts may dismiss actions that are subject to arbitration elsewhere.[3] *See, e.g., Sanum Inv. Ltd. v. San Marco Capital Partners LLC*, 263 F. Supp. 3d 491, 496-97 (D. Del. 2017).

## III. DISCUSSION

### A. Arbitrability of Plaintiff's Claims

It is not disputed that Plaintiff accepted the Offer, which included the Agreement, or that the Agreement by its terms applies to Plaintiff's discrimination claims. Plaintiff, however, argues that the Agreement is unreasonable and unconscionable because he was pressured to sign it to obtain employment and he did not have an attorney. Therefore, he argues that it is not enforceable. (D.I. 11 at 2-3).

Under Delaware law, a contract is unconscionable "if one of the parties lacks meaningful choice and the contract terms unreasonably favor one party over the other." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009). "Courts have generally recognized that the doctrine of unconscionability requires both procedural and substantive elements." *Maxwell v. Cellco P'ship*, C.A. No. 19-152-RGA, 2019 WL 5587313, at *7 (D. Del. Oct. 30, 2019) (citation omitted). Moreover, "[s]uperior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness. The traditional test is this: a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other.'" *Gonzalez v. Citigroup*, C.A. No. CIV.09-017-SLR, 2009 WL 2340678, at *2 (D. Del. July 30, 2009).

---

[3]  According to the Agreement, "arbitration . . . will occur in the state where [employee] . . . was most recently employed by the Firm, unless otherwise agreed by the Parties." (D.I. 10-2 at 9). In this case, the location of Plaintiff's most recent employment appears to be Delaware. (*See* D.I. 1 at 2).

Here, Plaintiff first argues that the Agreement should be considered "null and void" because it was designed to "[p]reemptively strip away the plaintiff's civil rights" and that "[a] 'reasonable' person would not accept an agreement that jeopardizes or 'waives' his constitutional and civil rights as provided by Title VII of the Civil Rights Act of 1964 unless he was coerced to do so." (D.I. 11 at 1-2). The United States Supreme Court, however, has rejected this argument holding "that 'by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). Additionally, courts in the Third Circuit have held that the FAA permits arbitration of Title VII claims. *See Esaka v. Nanticoke Health Servs., Inc.* 752 F. Supp. 2d 476, 483 (D. Del. 2010) (dismissing the plaintiff's Title VII and Delaware Discrimination in Employment Act claims and compelling arbitration, finding that, *inter alia*, "Third Circuit case law is . . . clear that Title VII discrimination claims do not require a judicial forum and that agreements to arbitrate such claims are enforceable under the FAA.") (internal citations omitted); *Gonzalez v. Citigroup*, C.A. No. 09-17-SLR, 2009 WL 2340678, at *2 (D. Del. July 30, 2009) (granting the defendant employer's motion to dismiss based on an arbitration agreement signed by the plaintiff, noting that, "[c]ontrary to plaintiff's argument, by acquiescing to the arbitration agreements, plaintiff did not 'forego the substantive rights afforded by [Title VII]; rather [he] only submit[ted] to their resolution in an arbitral, rather than a judicial forum'").

Second, Plaintiff argues that the Agreement is unenforceable because not signing the Agreement would have caused him "economic duress" because "declining the agreement would translate to unemployment." (D.I. 11 at 2). This, however, does not support a finding of

unconscionability. Indeed, courts regularly enforce arbitration agreements that are a condition of employment. *See Vilches v. The Travelers Cos.*, 413 Fed. App'x. 487, 494 (3d Cir. 2011) ("Vilches only demonstrated their position relative to Travelers and their interest in maintaining employment, which is insufficient on its own to prove that the class arbitration waiver is unreasonably favorable to Travelers. As such, we conclude that the waiver is not substantively oppressive and unconscionable."); *Gonzalez*, 2009 WL 2340678, at *2 ("The possibility that defendant allegedly tempted plaintiff with a spot on the payroll to goad him into signing the arbitration agreements does not, standing alone, prove unconscionability."); *Mayhan v. Sunoco, Inc.*, C.A. No. 18-355-RGA, 2020 WL 247517, at *3 (D. Del. Jan. 16, 2020) (citing cases); *Marotta v. Toll Bros.*, C.A. No. 09-2328, 2010 WL 744174, at *4 (E.D. Pa. Mar. 3, 2010) ("A plaintiff's fear of the loss of her job is insufficient to amount to economic duress when 'the situation that caused [her] to fear the loss of [her] job – the need to support [her family] – was of [her] own making,' and not that of the defendant.") (citation omitted).

Third, Plaintiff argues that the Agreement is "based on 'bad faith' in the form of "undue influence" because he was "pressur[ed]" to "succumb even when the conditions are in violation of his civil rights" and the Agreement violates public policy because he did not have legal representation when signing the Agreement. As Defendant points out (D.I 12 at 5), however, "[t]he FAA manifests 'a congressional declaration of a liberal federal policy favoring arbitration agreements . . . .'" *Quilloin v. Tenet HealthSystem Phila., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). "The fact that courts routinely find compulsory arbitration clauses enforceable in employment contexts demonstrates that such agreements are not contrary to public policy." *Marotta*, 2010 WL 744174, at *6 (citing cases). Here, Plaintiff does not point to any specific violation of public policy to

support his claim and his conclusory assertion of a violation of public policy cannot suffice to support his argument in light of the clear case law to the contrary.

Moreover, with respect to Plaintiff's assertion of "undue influence" and lack of legal representation, it is well-settled law in the Third Circuit that "[u]nequal bargaining power, without more, is insufficient to hold an arbitration agreement unconscionable." *Wells v. Merit Life Ins. Co.*, 671 F. Supp. 2d 570, 574 (D. Del. 2009); *see also Tulowitzki v. Atlantic Richfield Co.*, 396 A.2d 956, 960 (D. Del. 1978) ("Superior bargaining power alone without the element of unreasonableness does not permit a finding of unconscionability or unfairness.  The traditional test is this: a contract is unconscionable if it is 'such as no man in his senses and not under delusion would make on the one hand, and as no honest or fair man would accept, on the other.'").  Because federal law recognizes a strong public policy in favor of arbitration, "'[n]othing short of a showing of fraud, duress, mistake' or some other compelling ground to invalidate a contract" "will permit a court to preclude enforceability of an agreement to arbitrate." *Esaka*, 752 F. Supp. 2d at 481 (citations omitted).[4]

Finally, Plaintiff suggests in his response (D.I. 11 ¶3) that Defendant colluded with his subsequent employer to terminate his employment in further retaliation for his alleged complaints of discrimination and harassment.  These arguments, however, were not asserted in the Complaint and are not part of this case.[5]

---

[4]  Plaintiff argues that Defendant did not reference the Agreement in its Position Statement that was filed with the Equal Employment Opportunity Commission ("EEOC").  That, however, is not relevant because the Agreement expressly "does not preclude [Plaintiff] from filing an administrative claim or charge with the Equal Employment Opportunity Commission ("EEOC")."  (D.I. 10-2 at 8).

[5]  The Court notes that Plaintiff suggests that these claims were not raised in his Charge of Discrimination filed with the EEOC, and therefore, it may be that Plaintiff has not

In sum, the Court finds that the Agreement constitutes a valid agreement between the parties to arbitrate and that Plaintiff's claims fall within the substantive scope of that Agreement. Therefore, arbitration of Plaintiff's claims is appropriate.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to compel arbitration and for a stay of proceedings during the pendency of the arbitration is granted. An appropriate order will follow.

---

exhausted his administrative remedies with respect to these claims, which would mean that this Court lacks jurisdiction to entertain them.

8